[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
STATEMENT OF THE CASE
This is a dispute over the status of an easement which the plaintiff claims to possess over land of the defendant, Thimble Creek.
The easement was created by deed dated February 9, 1976 in which one Korman conveyed to the defendant's predecessors in title land on Route 1 in Branford. The deed language purported to reserve "into the Grantor herein, his heirs and assigns, forever a 25 foot easement running along the westerly boundary line of the above-described parcel, for all purposes whatsoever, for ingress and egress in and to other land of the Grantor herein, including vehicular traffic."
The deed also referred to a map, recorded on the land records, and entitled "Map Showing Land To Be Conveyed To Phil Quinlan, By Irving B. Korman, Trustee. . . ."
Then, on March 2, 1976, Korman conveyed to the plaintiff land CT Page 355-W bounded in part "by land formerly of Irving B. Korman, Trustee", and "Together with a right of way for all purposes whatsoever, for ingress and egress in and to the Boston Post Road, running off the easterly line of the premises and being 25 feet in width, including vehicular traffic all as reserved in a deed from the Grantor herein to Philip E. Quinlan, et al dated Feb. 9, 1976."
In 1987, the Quinlan parcel was in the process of being developed when Robert Reynolds, an officer of the developing corporation, discovered the right of way. Testimony varies as to how far the development had progressed, but discussions were held with the plaintiff and his engineer. Mr. Reynolds stated that at the time of the first discussion there were no improvements in the right of way. The parties "agreed to work it out", apparently by moving the right of way and by the developer giving up some parking spaces so that the plaintiff could maintain access to the right of way. The developer proceeded to place its utilities under and on the right of way though no written agreement was ever signed by the parties.
The matter was discussed on subsequent occasions and in 1990 proposals were still being exchanged. When the parties failed to agree on a solution, this suit resulted.
The plaintiff claims his right of way is still in existence CT Page 355-X and is valid as set forth in the deed and on the map noted above.
The defendant successor to the developer, though conceding notice of the easement, claims that:
 1. The plaintiff abandoned the right of way in the process of entering into the oral agreement;
 2. The developer did not know which of the parcels previously owned by Korman was the dominant estate;
 3. The plaintiff impliedly waived or is estoppel from enforcing the easement;
 4. The Statute of Frauds and the Statute of Limitations precludes consideration of the plaintiff's claim that he allowed the improvements to remain "conditioned upon receiving an alternate easement."
 I
In support of the argument that the plaintiff has abandoned the easement, the defendant cites Steuck v. Murphy, 107 Conn. 656
CT Page 355-Y (1928). There, the court found that the owner of the easement had abandoned it by giving a parol license to the owners of the servient parcel in exchange for another easement. In that case the court stated:
"It is established law that an easement may be extinguished or modified by a parol agreement made between the owners of the dominant and servient estates when the agreement has been executed by the servient estate. The agreement for a parol license, coupled with its execution, furnished satisfactory evidence that [the dominant estate] intended to extinguish temporarily a part of this easement] intended to extinguish temporarily a part of this easement, when the consideration for the license was the grant ofa substituted easement which was likewise executed." (Emphasis added.) Steuck v. Murphy Co., supra, 107 Conn. 664-65.
Unfortunately, in this case, while the parties may have "agreed to work it out" (the words of Mr. Reynolds), and the plaintiff may have agreed to give up his original easement, the abandonment did not take place because the alternate easement was never executed.
This argument is further weakened by the defendant's vehement denial that any agreement for an alternate easement exists.
II
CT Page 355-Z
The defendant relies upon Branch v. Occhionero, 239 Conn. 199,205 to argue that the plaintiff has failed to prove that the right-of-way was intended to benefit the plaintiff's parcel, as opposed to other land owned by the grantor at the time of the easement's creation.
Branch, however, is easily distinguishable. Branch involves a grantor who owned two different parcels of land, one contiguous with the purportedly servient estate, and one a quarter a mile away. The defendants, successors in interest of the contiguous property, claimed a right-of-way over the plaintiff's property. The defendants argued that it was "reasonable to believe that [their] contiguous parcel would be benefited by a right-of-way rather than another parcel located elsewhere. Branch v.Occhionero, supra, 239 Conn. 205. The court held that the defendants had not proved that "the right-of-way was created as anappurtenance to the [contiguous] property." (Emphasis added.) Id. This situation is factually distinguishable and thus Branch is inapplicable.
Here, a common grantor owned a large piece of land which was identified as the dominant parcel in the deed from Korman to the defendant's predecessor in title. This large section of land was later subdivided and conveyed to several people, including the CT Page 355-AA plaintiff. The defendant argues that it is impossible to determine whether the plaintiff's sub-parcel is the dominant estate intended to be benefitted [benefited] by the easement; as a result, the plaintiff has no valid right-of-way over the defendant's property. "It is a well established principle," however, "that where an easement is appurtenant to any part of a dominant estate, and the estate is subsequently divided into parcels, each parcel may use the easement as long as the easement is applicable to the new parcel, and provided the easement can be used by the parcels without additional burden to the servient estate." Stiefel v. Lindemann,33 Conn. App. 799, 813 (1994).
The easement is applicable to the plaintiff's land. "[A]n easement is appurtenant to any part of a dominant estate, . . . when it is divided by deed, devise or other legal method, each of the parts resulting from such division may use the easement as far as applicable." Phoenix Nat'l. Bank v. United States Security TrustCo., 100 Conn. 622, 630 (1924). See also Sieger v. Riu,123 Conn. 343, 346-57 (1937); Peck v. Mackowsky, 85 Conn. 190, 193 (1912). An easement will benefit a sub-parcel of the dominant estate if the easement is applicable to the subdivided property, "so that it can be used in connection therewith." Phoenix Nat'l. Bank v. UnitedStates Security Trust Co., supra, 100 Conn. 634. "[T]he test is availability of the way to the dominant land either by its directly abutting on the same, or by a capacity of reaching it over other CT Page 355-BB land over which the dominant owner has a legal right of passage." Id. Here, the plaintiff's land abuts the right-of-way on the defendant's property. Thus, the easement is appurtenant to the plaintiff's land.
Furthermore, it should be noted that Schedule A-1 of the defendant's condominium declaration lists the encumbrances on the property, including "A twenty-five (25') foot easement in Irving B. Korman, Trustee, running along the westerly boundary line of the above-described parcel, for all purposes whatsoever, for ingress and egress, in and to other land of the said Irving B. Korman, Trustee, including vehicular traffic as reserved in a deed" from Korman to the, defendant's predecessor in interest. (Declaration of Thimble Creek, Plaintiff's Exhibit E.) In addition, the defendant's map of the property in question contains the notation "25' Right-of-way in Favor of Anthony Papa." (Defendant's Exhibit 4.) The map for the defendant's condominium development specifically labels the right-of-way as "25' Easement to Anthony Papa." (Map of Thimble Creek Office Condominiums, Plaintiff's Exhibit F.) In light of these materials, it is disingenuous for the defendant to contend that it did not know that Korman's successor in interest, Papa, was the beneficiary of the twenty-five foot easement.
III
CT Page 355-CC
The court also finds that there has been no estoppel or implied waiver. "[I]mplied waivers and estoppels by conduct are so similar that they are nearly indistinguishable." (Internal quotation marks omitted.) O'Hara v. State, 218 Conn. 628, 641
(1941). "[A]ny claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." O'Sullivan v. Bergenty,214 Conn. 641, 648 (1990). Here, the defendant argues that it relied on the plaintiff's statement that it would pick two or three parking spaces to use to access the defendant's property in place of the plaintiff's right-of-way. At the same time, the defendant argues that no agreement for an alternative easement exists because the plaintiff failed to pick the parking spaces over which he wanted access. Thus, the defendant denies that any agreement was reached, but contends that its reliance on the plaintiff's statements renders the extinguishment of the easement proper under equity.
"We cannot predicate an estoppel in favor of one whose own omission or inadvertence has contributed to the problem at hand. . . . The party claiming an estoppel must show that [it] exercised due CT Page 355-DD diligence to know the truth, and that [it] not only did not know of the true state of things but also lacked any reasonably available means of acquiring knowledge." (Citations omitted; internal quotation marks omitted.) Edart Truck Rental Corp. v. B. Swirsky Co., 23 Conn. App. 137, 141 (1990). By failing to have an executed agreement, in writing, the defendant added to the difficulty surrounding the plaintiff's right-of-way.
The defendant's claim of detrimental reliance is equally unavailing. The defendant argues that the plaintiff misled the defendant into believing that two or three access spaces would be a sufficient substitute for the right-of-way. The defendant contends that it made improvements on the easement as a result, to its detriment. "For those reasons," according to the defendant, "there was an implied waiver of the alleged `condition' to abandon and the plaintiff should be estopped from now claiming said easement." (Trial Memorandum of Defendant, p. 13.) It is unclear why the plaintiff's failure to specify the parking spaces not only waived the original easement, but also estops the plaintiff from pursuing the alternate easement. The defendant's reliance on statements, which it contends did not constitute an agreement, was not reasonable. The defendant's reliance on the statements was self-serving and to its benefit, allowing it to complete its development. As discussed above, the defendant was aware of the plaintiff's easement; its failure to establish an alternate CT Page 355-EE easement or a binding agreement precludes it from claiming estoppel.
Initially, the defendant argued that the plaintiff was guilty of laches. There is no estoppel by laches because the defendant has failed to show that the plaintiff had any duty to designate the parking spaces for access. Duty is an essential element of estoppel by laches. Hartford Trust Co. v. Town of West Hartford
84 Conn. (1911). If no agreement for an alternative easement exists, as the defendant contends, there can be no duty of the plaintiff to designate the route of access to the alternative, easement. Thus, prejudicial delay in performing the duty is
 IV
In its brief, the defendant requests the court to reconsider its motion in limine dated September 21, 1994. Actually, it was, such a motion dated October 15, 1996 and presented immediately prior to trial which addressed the Statute of Frauds and the Statute of Limitations defenses argued in its brief.
This motion was denied by the court in a lengthy oral decision. The defendant's argument on this motion is puzzling at best. It argues that there was no agreement between the parties. The plaintiff agrees. Then, in oral agreement, the defendant CT Page 355-FF stated that Mr. Reynolds believed there was an agreement and that the plaintiff abandoned the right of way in return for "the oral contract".
It then goes on in the memorandum of law attached to this motion to show that the oral agreement it evoked from Mr. Reynolds was invalid in the face of both statutes!
The court concludes that there was no valid oral contract. Nevertheless, the plaintiff was free to testify as to what he did and to offer evidence from an engineer and an attorney with supporting physical evidence to explain what had transpired. In brief, neither the Statute of Frauds nor the Statute of Limitations precluded the plaintiff from introducing evidence that he allowed the improvements to remain "conditioned upon receiving an alternate easement."
CONCLUSION
The plaintiff has proved by clear and convincing evidence that he is the beneficiary of the easement in question and that the defendant has acted contrary to his right, title and interest by encumbering it with utility lines and equipment. Judgment may so enter.
There having been no evidence offered as to monetary damages, CT Page 355-GG none are awarded. Similarly, as to the defendant Conn. Light 
Power company no damages are awarded.
The plaintiff has requested an order that the defendants remove said utilities from the right-of-way. The court will defer action on that request to give all parties an opportunity to plan for and effect this removal in a reasonable time and manner. Should this not proceed in such a way, the plaintiff may move for a hearing to determine how this judgment should be implemented. One avenue available to the court is to refer to the stipulation of the parties in open court wherein the defendant Conn. Light Power company's counsel was permitted to be absent from the trial upon his placing on the record the fact that the cost of the utilities relocation would be $25,974.36.
Anthony v. DeMayo Judge Trial Referee CT Page 355-HH