HYDE ROAD DEVELOPMENT, LLC *v.*
PUMPKIN ASSOCIATES, LLC
(AC 32328)

DiPentima, C. J., and Gruendel and Mihalakos, Js.

Argued May 16—officially released July 12, 2011

*Eric H. Rothauser*, with whom were *Jay B. Weintraub* and, on the brief, *Louisa S. Lindberg*, law clerk, for the appellant (defendant).

*Sheila A. Huddleston*, with whom were *R. Michael Meo, Jr.*, and, on the brief, *Alison P. Baker*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Pumpkin Associates, LLC, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff,

Hyde Road Development, LLC. The dispositive issue in this appeal is whether the grantee of an express easement appurtenant must also be the owner of the dominant estate to which the benefit of the easement purportedly belongs. The court concluded that, pursuant to *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 735 A.2d 798 (1999), the grantee of an express easement appurtenant need not hold title to the dominant estate. We disagree and, accordingly, reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff is principally owned by Roger Toffolon. Toffolon is also the principal owner of White Oak Excavators, Inc., and its successor, the White Oak Corporation (White Oak), and the Connecticut Sand and Stone Corporation (Stone). In 1967, Stone owned a parcel of property in Farmington (parcel one) and the Balf Corporation (Balf) owned a parcel of property adjacent to parcel one, also located in Farmington (parcel two). In July, 1967, Balf conveyed a right-of-way by quitclaim deed (1967 deed) to White Oak, granting White Oak, "its successors and assigns forever, a . . . permanent easement to construct, maintain and repair a roadway, fifty . . . feet in width" over parcel two (right-of-way). The 1967 deed specifically identified White Oak as grantee of the right-of-way and included a metes and bounds description of both parcel two and the right-of-way. Toffolon explained that the right-of-way was used by White Oak and Stone to haul raw earth materials from parcel one, although it is undisputed that White Oak never held an ownership interest in parcel one or any other property in the surrounding area.

On February 14, 2001, parcel two was sold to the defendant.[1] On November 21, 2001, Stone sold parcel

[1] The defendant is owned by Joseph Gilberti. Gilberti testified that he was aware of the existence of the right-of-way at the time that parcel two was purchased by the defendant. Additionally, we note that the right-of-way was identified both on an appraisal report prepared in anticipation of the sale

one to the plaintiff.[2] In 2003, the plaintiff was approached by AT&T, which was interested in acquiring a site for a cell phone tower (tower) on parcel one. Subsequently, the plaintiff and AT&T entered into an agreement, whereby AT&T would lease a portion of parcel one for the purpose of installing and maintaining the tower. Prior to construction of the tower, however, the plaintiff was informed that the right-of-way would need to be developed into a roadway and that utilities would need to be installed under it so that the tower could be serviced adequately. Accordingly, the plaintiff contacted the defendant regarding the modifications to the right-of-way that the plaintiff sought to have installed to consummate the transaction with AT&T. The defendant objected to the plaintiff's proposed modifications, claiming, inter alia, that the right-of-way was invalid and that the plaintiff had no right of access over the right-of-way.[3] On December 2, 2005, White Oak, by way of a quitclaim deed, granted its interest in the right-of-way to the plaintiff.

In 2007, the plaintiff commenced this action, seeking, inter alia, a declaratory judgment "decreeing that as the owner of the [right-of-way] . . . [it] has a clear and unambiguous right to construct, maintain and repair a road over the [right-of-way], including the right to install underground utilities . . . ." In response, the defendant filed a counterclaim seeking, inter alia, a declaratory judgment that the "[p]laintiff's alleged [right-of-way] is invalid . . . ." The matter was tried to the court

of parcel two to the defendant, as well as a title insurance policy covering the sale of parcel two to the defendant. In fact, the right-of-way was listed as an encumbrance on the warranty deed of parcel two to the defendant.

[2] The warranty deed from Stone to the plaintiff included language that referenced Stone's right to utilize the right-of-way, notwithstanding the fact that Stone was not identified as a beneficiary of the right-of-way in the 1967 deed.

[3] Given the defendant's objection to the proposed modifications, the plaintiff's agreement with AT&T has been terminated.

on November 18 and 19, 2009, during which the court heard testimony from five witnesses and received numerous exhibits into evidence. Following posttrial briefing, the court, on May 26, 2010, issued a memorandum of decision, ruling in favor of the plaintiff and concluding, inter alia, that the right-of-way "is a valid easement appurtenant containing the right to build a roadway containing utilities . . . ." Specifically, the court determined that, although parcel one was not identified as the dominant estate in the 1967 deed conveying the right-of-way to White Oak, the plaintiff had proven that parcel one was the dominant estate pursuant to our Supreme Court's decision in *Branch* v. *Occhionero*, 239 Conn. 199, 206, 681 A.2d 306 (1996), and, therefore, the benefit of the right-of-way inured to the plaintiff as the owner of parcel one. Additionally, the court reasoned that, given the Supreme Court's decision in *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, supra, 250 Conn. 135, the fact that White Oak, as the express beneficiary of the right-of-way in the 1967 deed, did not own parcel one was not dispositive given Connecticut's abolition of the unity of title doctrine. Id., 143–45. This appeal followed.

The defendant now claims that the court improperly determined that the 1967 deed conveying the right-of-way over parcel two to White Oak created a valid easement appurtenant intended to benefit parcel one. In this regard, the defendant does not dispute that the 1967 deed was intended to create an express easement appurtenant in favor of White Oak.[4] Rather, the defendant argues that because White Oak did not own parcel

---

[4] We note that the court's memorandum of decision explicitly concludes that the 1967 deed created an easement appurtenant, a finding that the defendant does not contest on appeal. Although a portion of the plaintiff's appellate brief argues in the alternative that the 1967 deed created an easement in gross, the majority of the plaintiff's appellate brief and argument in this appeal is devoted to analyzing the 1967 deed as creating an easement appurtenant. Moreover, our own review of the 1967 deed, as well as the factual circumstances surrounding its creation as found by the court, con-

one, or any property in the surrounding area of the right-of-way, no dominant estate could exist to effectuate the express easement appurtenant purportedly created by the 1967 deed. We agree.

Before addressing the merits of the defendant's claim, we begin by setting forth the legal principles and standard of review governing our analysis. "Easements are classified as either easements appurtenant or easements in gross. . . . Two distinct estates are involved in an easement appurtenant: the dominant to which the easement belongs and the servient upon which the obligation rests. . . . An easement appurtenant must be of benefit to the dominant estate but the servient estate need not be adjacent to the dominant estate." (Internal quotation marks omitted.) *Irving* v. *Firehouse Associates, LLC*, 95 Conn. App. 713, 728, 898 A.2d 270, cert. denied, 280 Conn. 903, 907 A.2d 90 (2006). "An easement appurtenant lives with the land. It is a parasite which cannot exist without a particular parcel of realty. An appurtenant easement is incapable of existence separate and apart from the particular land to which it is annexed. . . . [An easement appurtenant] inheres in the land and cannot exist separate from it nor can it be converted into an easement in gross. . . . An appurtenant easement cannot be conveyed by the party entitled to it separate from the land to which it is appurtenant. . . . Further, because of the incorporeal nature of an easement appurtenant, its owner cannot be disseized or otherwise ousted of it; he can only be disturbed or obstructed in its enjoyment." (Citations omitted; internal quotation marks omitted.) *Harkins* v. *Girouard Estates, Inc.*, 31 Conn. App. 485, 495, 625 A.2d 1388, cert. denied, 227 Conn. 906, 632 A.2d 691 (1993).

firms that the 1967 deed sought to establish an easement appurtenant. Accordingly, we limit our analysis to a consideration of the 1967 deed's validity as establishing an express easement appurtenant with parcel one as the alleged dominant estate.

"The burden of proof rests upon [the party], who claim[s] the right-of-way . . . to show the existence of all facts necessary to prove the right-of-way was created as an appurtenance to [its property]." *Branch* v. *Occhionero*, supra, 239 Conn. 205. The court's findings of fact are subject to the clearly erroneous standard of review. See *Castonguay* v. *Plourde*, 46 Conn. App. 251, 261, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 107, 897 A.2d 58 (2006); see also Practice Book § 60-5.

In *Branch,* the defendants claimed that they had a right-of-way over the plaintiffs' property on the basis of a deed, dated May 1, 1886, from H. Pascal Beckwith to John Borland (1886 deed). *Branch* v. *Occhionero,* supra, 239 Conn. 201. In the 1886 deed, Beckwith conveyed property in Waterford to Borland, subject to a right-of-way over the property in favor of John Gardner and his heirs. Id. At the time that the 1886 deed was executed, Gardener *"owned two parcels of land* in Waterford." (Emphasis added.) Id. One property was immediately north and adjacent to the Borland property. Id. The other property was located one quarter of a mile south of the southwest corner of the Borland property. Id. At the time of trial, the plaintiffs had acquired the Borland property and the defendants had acquired the Gardner property that was immediately north of the Borland property. Id. The plaintiffs' deed to the Borland property contained the reservation that it was subject to the right-of-way; however, none of

the deeds in the defendants' chain of title contained reference to the right-of-way. Id.

The trial court in *Branch* rejected the defendants' claim to the right-of-way over the plaintiffs' property. Id., 202–204. Specifically, the court concluded, inter alia, that there was no evidence that Gardner "used or claimed the right-of-way as an appurtenance to the defendants' property," as opposed to the other property owned by Gardner that was located one quarter of a mile south of the southwest corner of, what was by then, the plaintiffs' property. Id., 204. "In other words, the trial court was unable to identify which property *owned* by Gardner in 1886 was the dominant estate." (Emphasis added.) Id. The defendants appealed, and the appeal was transferred to the Supreme Court, which affirmed the judgment of the trial court. Id., 203. On appeal, the Supreme Court explained that, because the *"grant to Gardner* in the 1886 deed does not identify which of the two parcels *owned by Gardner* was intended to be the beneficiary of the right-of-way . . . the defendants failed to establish that the right-of-way set forth in the 1886 deed was intended to benefit their property." (Emphasis added.) Id., 206.

In the present case, the 1967 deed conveying the right-of-way to White Oak does not identify parcel one or any parcel of property as the dominant estate to be served by the right-of-way, nor does it identify Stone, as the plaintiff's predecessor in title to parcel one, as a beneficiary of the right-of-way. Nonetheless, the court concluded that, pursuant to *Branch*, the plaintiff, as the party claiming the right-of-way, could prove and had proven, that on the basis of the factual circumstances surrounding execution of the 1967 deed and use of the right-of-way, parcel one was the dominant estate to be benefited by the right-of-way. See id. The fundamental distinction between *Branch* and the present case, however, is that the express grantee of the appurtenant

easement in *Branch*—namely, Gardner—was also the owner of both of the dominant estates that could possibly have been intended to be benefited by the right-of-way, including the one that the defendants in *Branch* owned as Gardner's successors in title. See id., 201–204; see also *Murray* v. *Schroeder*, 59 Conn. App. 747, 752–53, 757 A.2d 1256 (2000) (beneficiary of easement appurtenant as owner of dominant estate identified adequately from circumstances); *D'Addario* v. *Truskoski*, 57 Conn. App. 236, 247–48, 749 A.2d 38 (no dispute as to dominant estate where dominant estate and its owner identified in deed), cert. denied, 253 Conn. 918, 755 A.2d 214 (2000). Here, unlike in *Branch*, the express grantee of the easement appurtenant—namely, White Oak—did not own *any* property, including parcel one, within the area that the right-of-way could possibly benefit. Thus, even looking to the factual circumstances surrounding the execution of the 1967 deed, there is no dominant estate owned by White Oak as the express grantee of the easement appurtenant that could be benefited by the right-of-way.[5] Accordingly, the court's reliance on *Branch* to justify its conclusion that the estate of a third party, owned by one other than the express grantee of an easement appurtenant, can prove it was the intended beneficiary and dominant estate of that easement is misplaced, and the court's factual findings attendant thereto are clearly erroneous.

Our analysis, however, does not end here. The court's conclusion that White Oak as the express grantee of the right-of-way need not own parcel one for it to be the dominant estate was also based on its interpretation of *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*,

---

[5] The fact that the warranty deed from Stone to the plaintiff referenced the right-of-way does not alter our analysis, as Stone had no interest in the right-of-way and, a fortiori, no right to convey it to the plaintiff. See *Powers* v. *Olson*, 252 Conn. 98, 109 n.6, 742 A.2d 799 (2000) ("one cannot convey greater title than that which one possesses").

supra, 250 Conn. 144. In *Bolan*, our Supreme Court abolished the unity of title doctrine adopted originally in *Curtin* v. *Franchetti*, 156 Conn. 387, 389, 242 A.2d 725 (1968). As such, a brief review of *Curtin* is beneficial to our analysis.

"In *Curtin*, the plaintiff claimed that she owned a right of way over the defendant's property. Both parties traced their chains of title to a common grantor. The trial court determined that the grantor had reserved a right of way over the defendant's property for the benefit of the plaintiff's property, and rendered judgment for the plaintiff. On appeal, [the Supreme Court] noted that, [under the unity of title doctrine] [t]he [right of] way can become legally attached to the dominant estate only if the same person has unity of title to both the [right of] way and the dominant estate. . . . Concluding that the plaintiff had failed to establish that the common *grantor* had owned her property at the time he had reserved an easement over the defendant's property, [the Supreme Court] reversed the judgment of the trial court." (Citation omitted; emphasis added; internal quotation marks omitted.) *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, supra, 250 Conn. 143–44. Therefore, as articulated originally in *Curtin* and abolished by *Bolan*, the unity of title doctrine previously required that "an easement *be created by a person who has title to both the easement area and the property to be served by the easement.*" (Emphasis added.) Id., 144.

Here, the court reasoned that "because the Supreme Court has abolished the unity of title doctrine, there is no need for [White Oak] to own the dominant estate." In abolishing the unity of title doctrine, the Supreme Court in *Bolan* held only that the *grantor* of an easement need not hold title to both the easement area—namely, the servitude—and the dominant estate for the easement to be validly created. See *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, supra, 250 Conn. 144. The

Supreme Court's holding in *Bolan* did not address the issue of whether the *grantee* of an express easement appurtenant need also be the owner of the dominant estate the easement purportedly benefits. Moreover, we are aware of no case, either in this jurisdiction or any other, that stands for the proposition that the express grantee of an easement appurtenant need not be the owner of the dominant estate the easement is intended to benefit. Nevertheless, we conclude that the principles governing the valid creation and execution of an express easement appurtenant mandates that the express grantee of the easement appurtenant must also be the owner of the dominant estate that the easement is intended to benefit. See *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 515, 757 A.2d 1103 (2000) ("[A]s a general rule, an appurtenant benefit may not be severed and transferred separately from all or part of the benefited property. . . . The purpose of this rule mirrors that of the rule against the use of the easement to benefit a nondominant estate. Limiting use of an appurtenant easement or profit to *holders of the dominant estate* . . . limits the potential burden on the servient estate. . . . Permitting severance and separate transfer of the benefit would generally permit conversion of an appurtenant benefit into a benefit in gross, imposing a greater burden on the property." [Citation omitted; emphasis added; internal quotation marks omitted.]);[6] 1 Restatement (Third), Property, Servitudes

---

[6] It is telling that the 1967 deed granting the right-of-way to White Oak expressly authorized White Oak to transfer its interest in the right-of-way that purportedly benefited parcel one as the dominant estate. It is undisputed, however, that White Oak held no ownership interest in parcel one. Thus, pursuant to the 1967 deed, it would be possible for White Oak to transfer the right-of-way, but impossible for White Oak to transfer parcel one as the dominant estate the right-of-way was allegedly intended to serve. Such a result is contrary to the principles underlying the validity of an easement appurtenant. See *Harkins* v. *Girouard Estates, Inc.*, supra, 31 Conn. App. 495 ("[a]n appurtenant easement cannot be conveyed by the party entitled to it separate from the land to which it is appurtenant"); 2 Restatement (Third), Property, Servitudes § 5.6, comment (a), p. 47 (2000) ("appurtenant

§ 1.5, comment (a), p. 31 (2000) ("appurtenant means that the benefit can be used only in conjunction with *ownership or occupancy of a particular parcel of land*" [emphasis added]). In addition, our Supreme Court has noted that "it would be contrary to common sense to disallow, in some cases, the use of the easement for the benefit of a nondominant estate owned by the dominant estate owner, but allow the use of the easement for the benefit of a nondominant estate owned by a nonowner of the dominant estate. Stated another way, it would be incongruous to allow the expansion of the use of an easement, appurtenant to the dominant estate, to benefit a party who does not hold a possessory interest in the dominant estate, but disallow the expansion of the use of the easement to benefit a nondominant estate that subsequently was acquired by the dominant estate owner." *Il Giardino, LLC* v. *Belle Haven Land Co.*, supra, 254 Conn. 515.

In sum, we conclude that the 1967 deed expressly granting White Oak the right-of-way over parcel two sought to establish an easement appurtenant in favor of White Oak. White Oak, however, did not own a parcel of property that could be identified as the dominant estate to which the benefit of the right-of-way was intended to run. Because the express grantee of an

benefits may not be severed and transferred separately from all or part of the benefited property").

Additionally, we are mindful of the policy concerns raised by the defendant with respect to servient estate owners seeking to ascertain the identity of the party holding title to a right-of-way where that party is, in fact, different than the express beneficiary of the right-of-way in an operative deed. If the court's decision were allowed to stand in the present case, future owners of servient estates in similar circumstances would be left to a veritable search for a "needle in a haystack' " in determining the true ownership of a servitude and the dominant estate to which its benefit runs. See 1 Restatement (Third), Property, Servitudes § 4.5, comment (d), p. 542 (2000) ("[t]he holders of appurtenant benefits can be located through land . . . records, which facilitates the process of negotiating modification and termination of servitudes").

easement appurtenant must be the owner of the dominant estate that the easement benefits, the court incorrectly concluded that parcel one, a parcel not owned by White Oak, was the dominant estate. Indeed, because White Oak did not own any parcel in relation to the right-of-way that could possibly be deemed the dominant estate, the 1967 deed intending to create the easement appurtenant in favor of White Oak itself was invalid. Accordingly, we conclude that the court improperly determined that the 1967 deed established a valid easement appurtenant in favor of the plaintiff.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment vacating the 1967 deed.

In this opinion the other judges concurred.